[Cite as *Earl v. Ohio Elections Comm.*, 2016-Ohio-7071.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Charles Earl, | : | |
| Appellant-Appellant, | : | |
| v. | : | No. 16AP-161 |
| | | (C.P.C. No. 15CV-5973) |
| Ohio Elections Commission, | : | |
| | | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on September 29, 2016

**On brief:** *Mark R. Brown; Mark G. Kafantaris*, for appellant. **Argued**: *Mark R. Brown*.

**On brief:** *Mike DeWine*, Attorney General, *Zachery P. Keller* and *Nicole M. Koppitch*, for appellee Ohio Elections Commission. **Argued:** *Zachery P. Keller*.

**On brief:** *Zeiger, Tigges & Little LLP, John W. Zeiger* and *Steven W. Tigges*, for appellee Terry L. Casey. **Argued:** *Steven W. Tigges*.

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Appellant, Charles Earl ("Earl"), appeals from the March 4, 2016 decision and judgment entry of the Franklin County Court of Common Pleas dismissing Earl's R.C. 119.12 administrative appeal for lack of subject-matter jurisdiction. For the reasons that follow, we affirm the judgment of the court of common pleas.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} Earl was the Libertarian Party of Ohio's candidate for Governor in 2014. In February 2014, Earl was the subject of an election protest filed by Gregory Felsoci, a member of the Libertarian Party. Felsoci alleged that signatures on Earl's nominating

petitions had been improperly collected. In March 2014, the Ohio Secretary of State upheld the protest. Secretary Husted disqualified the petitions because paid circulators who obtained signatures for Earl's nominating petitions failed to disclose the name and address of the entity that paid them in the employer information box on the petitions as required by R.C. 3501.38(E)(1). Consequently, Secretary Husted removed Earl's name from the May 2014 primary ballot, and Earl was excluded from appearing as a Libertarian Party candidate on the November 2014 ballot.

{¶ 3} Earl filed an action in federal district court seeking to be restored to the ballot, but was ultimately unsuccessful. In the federal litigation, it was discovered that Felsoci was not responsible for paying his lawyers, nor did he know who was paying his legal fees. Eventually, it was learned that Terry L. Casey was the secret client who was behind Felsoci's protest. Casey testified in the federal litigation that he alone was responsible for paying Felsoci's lawyers and that neither the Kasich Campaign nor the Ohio Republican Party were involved with Felsoci's protest. Later, after certain emails came to light through discovery, Casey testified that the Kasich Campaign helped him with the protest.

{¶ 4} In the November 2014 election, John Kasich and Mary Taylor, the Republican candidates, were elected Governor and Lieutenant Governor.

{¶ 5} Earl filed a complaint with the Ohio Elections Commission ("Commission") on April 15, 2015, against Governor John Kasich, Lieutenant Governor Mary Taylor, Kasich/Taylor for Ohio ("Kasich Campaign"), Matt Carle, Campaign Director for Kasich/Taylor for Ohio, Jeff Polesovsky with Kasich/Taylor for Ohio, Dave Luketic, with Kasich/Taylor for Ohio, and Terry Casey (collectively "respondents"). Earl alleged that high ranking officials in the Kasich Campaign had acted in concert with Casey to have Earl removed from the ballot, and in the course of such activity, Casey had made an improper in-kind contribution to the Kasich Campaign by hiring and agreeing to compensate the Zeiger firm to accomplish the election protest. Earl alleged in his complaint that the Kasich Campaign and Casey's joint efforts constituted an improper "in kind" contribution from Casey to the Kasich Campaign.

{¶ 6} Attached to the complaint before the Commission were invoices showing that Casey owed more than $250,000 to Felsoci's lawyers. Earl also submitted emails

produced in the federal litigation indicating that the Kasich Campaign assisted Casey's efforts to recruit someone to protest Earl's inclusion on the ballot and ultimately to remove Earl from the ballot.

{¶ 7} The Commission scheduled the case for a preliminary review on May 21, 2015, at which time the Commission stated it would review all timely filed documents, and:

> After reviewing the documents, the Commission may do one of the following:
>
> 1. Find there has been no violation;
> 2. Find there has been a violation; or
> 3. Set the matter for a hearing at a later date if the Commission desires to receive further testimony.

(Apr. 15, 2015 Commission Letter.)

{¶ 8} Casey and the remaining respondents filed motions to dismiss the complaint challenging the sufficiency of the complaint and the attached evidence. Casey provided his account of events and argued that his motive for the protest was to embarrass the Democratic Party because he perceived the Democrats as assisting the Libertarian Party of Ohio. He also argued that the respondents did not have input or involvement in decision-making, direction, or control of the protest. Casey also argued that the Ohio Republican Party had paid his legal fees in the amount of $300,000, and the payment of the fees was properly reported pursuant to Ohio Adm.Code 111-5-16. Casey additionally claimed that he had a First Amendment right to protest Earl's candidacy.

{¶ 9} The remaining respondents argued that the complaint was insufficient as a matter of law and failed to set forth a prima facie case that respondents had violated Ohio election law. The respondents admitted that they provided copies of petitions to Casey and responded to requests for information about potential protestors, but that this activity was insufficient as a matter of law to constitute an in-kind contribution. The respondents argued that an in-kind contribution only exists when the campaign agent who was assisted by the third party acted with a view toward having an expenditure made for the campaign.

{¶ 10} The respondents also claimed that even if violations were found, good cause existed not to impose sanctions. It further argued the Ohio Republican Party had paid the

Zeiger firm for legal services, and these payments were properly reported pursuant to Ohio Adm.Code 111-5-07.

{¶ 11} At the preliminary review, the Commission posed questions and heard oral argument from the attorneys for Earl, Casey, and the remaining respondents. The Commission did not receive evidence or take testimony.

{¶ 12} The respondents argued that there was no evidence of coordination, that Casey had control of the protest, and that the Kasich Campaign had only minimal activity at the beginning of the protest.

{¶ 13} Casey's attorney argued that Casey did not undertake this at the request or direction of the Kasich Campaign, that he had no polling data to indicate who the protest would benefit, and that Casey undertook the protest to expose the Democratic involvement in propping up the Libertarian Party of Ohio.

{¶ 14} Earl's attorney argued that the factual issue was whether there was probable cause to believe there was consent and coordination by the Kasich Campaign in Casey's efforts. He argued that the emails attached to the complaint showed that there was. Earl argued that at a bare minimum probable cause existed to support the filing of the complaint.

{¶ 15} At the conclusion of the preliminary review, the commission voted 5-2 to dismiss the complaint. On June 30, 2015, the commission issued an order granting the motion to dismiss.

{¶ 16} After the commission had dismissed the complaint, Earl obtained more discovery in the federal litigation showing that at the time Earl filed his complaint with the commission, Casey actually owed $592,074.91 to the Zeiger law firm. Thus, the Ohio Republican Party had only paid approximately half of what Casey owed to the firm for the election challenge and related litigation. Earl also produced more emails documenting further communications between Casey and members of the Kasich Campaign related to locating Felsoci, the protestor who challenged Earl's inclusion on the ballot. These documents had not been previously disclosed in discovery in the federal litigation. Earl submitted these documents to the commission and requested a rehearing on July 8, 2015, which was denied. Earl then appealed to the Franklin County Court of Common Pleas on July 14, 2015.

{¶ 17} The court of common pleas dismissed the appeal on the grounds that the dismissal at the preliminary review stage was an executive action and not an adjudication within the meaning of R.C. 119.12. Thus, in the absence of an adjudication, the court of common pleas found that it lacked jurisdiction to consider the appeal. The court of common pleas characterized the dismissal as a determination that the complaint lacked probable cause.

## II. ASSIGNMENTS OF ERROR

{¶ 18} Earl has appealed to this court asserting the following assignments of error:

> 1. The Common Pleas Court erroneously ruled that the <u>full</u> Ohio Elections Commission (hereinafter "the Commission") could <u>only</u> resolve Earl's Complaint based on lack of jurisdiction, insufficient pleadings, or lack of probable cause.

> 2. The Common Pleas Court did not apply the proper analysis, announced in *Common Cause/Ohio v. Ohio Elections Commission*, 150 Ohio App.3d 31, 2002-Ohio-5965, 779 N.E.2d 766 (10th Dist.), for assessing whether a dismissal by the full Commission is based on a lack of probable cause.

> 3. The Common Pleas Court erred in concluding that the Commission's record "absolutely refuted" the possibility that the full Commission's dismissal might have been on the merits.

> 4. The Common Pleas Court erred in concluding that it lacked jurisdiction over Appellant's administrative appeal.

## III. ANALYSIS

{¶ 19} The assignments of error are interrelated and shall be addressed together.

{¶ 20} "No inherent right to appeal from an administrative agency's decision exists absent constitutional or statutory authority." *Robinson v. Ohio Elections Comm.*, 10th Dist. No. 04AP-495, 2004-Ohio-6452, ¶ 9. Where there is no right to appeal a decision of the Elections Commission, an appeal of such a decision must be dismissed for lack of subject-matter jurisdiction. *Ashenhurst v. Ohio State Elections Comm.*, 10th Dist. No. 15AP-184, 2016-Ohio-777, ¶ 26.

{¶ 21} There is overwhelming authority from this district that no right of appeal exists under R.C. 119.12 from a determination by the Commission that no probable cause

exists after conducting its preliminary review.  *Robinson* at ¶ 11, 15; *State ex rel. Common Cause/Ohio v. Ohio Elections Comm.,* 156 Ohio App.3d 544, 2004-Ohio-1594, ¶ 14-15 (10th Dist.) ("*Common Cause* II"); *Common Cause/Ohio v. Ohio Elections Comm.,* 150 Ohio App.3d 31, 2002-Ohio-5695, ¶ 10-11 (10th Dist.) ("*Common Cause* I"); *Billis v. Ohio Elections Comm.,* 146 Ohio App.3d 360, 362-64 (10th Dist.2001); *Ashenhurst* at ¶ 26.

{¶ 22} Faced with this jurisdictional barrier to appeal, Earl argues that the dismissal by the Commission was not for lack of probable cause but was a decision on the merits and therefore appealable.  Earl is correct that in its letter to him, the Commission indicated that at the preliminary review it may do one of the following:

> 1.  Find there has been no violation;
> 2.  Find there has been a violation; or
> 3. Set the matter for a hearing at a later date if the Commission desires to receive further testimony.

(Apr. 15, 2015 Commission Letter.)

{¶ 23} These options are all encompassed by Ohio Adm.Code 3517-1-11(A) which governs preliminary reviews and provides in pertinent part as follows:

> (A) Preliminary review.  All cases not subject to the provisions of rule 3517-1-10 of the Administrative Code shall be subject A preliminary review of the allegations shall be held by a probable cause panel or the full commission, at the discretion of the staff attorney to the commission. At the preliminary review stage, the body hearing the case shall review all pleadings, evidence, and motions before it to determine jurisdiction, sufficiency of the complaint, and whether probable cause exists for the full commission to determine whether a violation of Ohio election law has occurred.
>
> * * *
>
> (2)     If the preliminary review is held before the full commission, the commission may:
>
> (a)  Continue the preliminary review for good cause shown; or
>
> (b)  Amend the complaint or referral * * *
>
> (c)  Request that an investigatory attorney be appointed, if it finds that the evidence is insufficient but that further review is necessary. * * *

(d)  Set the matter for a hearing by the full commission, if it finds that a significant factual dispute exists or there is uncertainty as to a material fact necessary to determine whether there is a violation * * *

(e)  Make a final disposition in the case and do one of the following:

(i)  Dismiss the case, or any part thereof, upon request of the complainant, or if commission jurisdiction, sufficiency of the complaint, or probable cause are not found; or

(ii)  Find good cause not to impose a fine or refer the matter for prosecution; or

(iii)  Impose a penalty * * *

(iv)  Refer the matter to the appropriate prosecuting attorney.

{¶ 24} Here, the Commission took two votes after hearing oral argument and posing questions to the attorneys. First, the Commission entertained a motion to deny the motion to dismiss. (Tr. 72.) There was discussion, and the motion failed. Then the Commission entertained a motion to "affirm the Motion to Dismiss." (Tr. 74.) The Commission voted 5-2 to grant the motion to dismiss. Thus, the Commission made a final disposition and dismissed the complaint after a preliminary review by the full Commission in accordance with Ohio Adm.Code 3517-1-11(A)(2)(e)(i). Assuming the Commission was acting in accordance with its rules, the Commission must have necessarily found either a lack of jurisdiction (which no one has raised), insufficiency of the complaint, or a lack of probable cause.

{¶ 25} When we review the nature of the motions to dismiss filed by Casey and the respondents, the transcript of the hearing, and the questions posed by the members of the Commission, we see that the Commission was acting in its executive capacity to review the pleadings, evidence, and motions in order to determine sufficiency of the complaint and whether probable cause existed.

{¶ 26} As pointed out by the court of common pleas, Earl's attorney argued the issue of probable cause to the Commission:

Ms. Armstrong and Mr. Tigis [sic], I think - - again, I may be putting words in mouths, but I tend to think that they agree that this is a factual issue presented to the Commission right now. The factual issue is whether there is probable cause to believe that the Casey [sic] Campaign and Terry Casey coordinated their activities to protest Charlie Earl. * * *

* * *

So the question here is a factual issue only of whether there was either consent by the Casey [sic] Campaign, * * * whether there is probable cause to believe that. And we have submitted, I think substantial evidence proving that there was a lot of coordination. * * *

* * *

Now, of course, you can cherry pick through the record, and you can find this and that, Casey said this, Casey said that. But again, my understanding is you're looking for probable cause at this stage. I happen to think there is enough evidence to convict them right now. But at bear [sic] minimum, there is probable cause to further investigate.

* * *

It's a factual issue presented to the Commission. And I think the Commission - - I beg the Commission to look into this further. And I think the Commission will find another iceberg under this tip. There is a lot of it.

(May 21, 2015 Tr. 28, 30, 37, 38.)

{¶ 27} Counsel for the respondents argued the evidence was insufficient to show a violation:

Simply put, there has to be some over covert overt action of communications about an expenditure for there to be an in-kind contribution. And that doesn't exist here. There is no grounds to find that there was in-kind contribution, nor are there grounds to continue on with an investigation.

(Tr. 15.)

{¶ 28} The members of the Commission had a number of questions and comments, some of which focused on Casey's motivation, who might have benefitted from

the election protest, and the proper interpretation of Ohio's campaign finance law.  But some seemed to focus on a lack of evidence showing coordination between Casey and the Kasich campaign.  For example:

> COMMISSIONER ALLISON:  I guess in my mind the case came down to what exactly involved coordination.
>
> And I don't see anything in here. I mean, under the Spicer case, the exact rules are it has to be more than mere knowledge, active participation.
>
> I mean, I think Complainants have had ample opportunity to collect evidence, and I don't see anything that was in those volumes of documents that shows there was more than active participation or the knowledge.

 (Tr. 72-73.)

{¶ 29} Our review of the record confirms that the preliminary review focused on whether Earl's complaint and the attachments provided sufficient allegations or evidence to move past the initial pleadings.  This is the exact purpose of a preliminary review determination and is considered an executive, rather than an adjudicative function.

{¶ 30} "[A]t the preliminary review stage of the proceedings the commission is to review only the pleadings, evidence and motions to determine jurisdiction, sufficiency of the complaint, and whether probable cause exists.  At that stage, the commission is acting in an executive, rather than in an adjudicative, function, and because a dismissal based on lack of probable cause is not an adjudication there is no provision for appeal."  *Common Cause* I at ¶ 10.

{¶ 31} Earl argues that *Common Cause* I and *Common Cause* II stand for the proposition that the full Commission is empowered to fully adjudicate the merits of the complaint, and that is what the Commission did here.  Earl ignores the fact that in *Common Cause I* and *Common Cause* II, the reason two of the three complaints were found to be appealable is because there were probable cause determinations made in those cases.   *Common Cause* I at ¶ 12 ("In both cases, there was a finding of probable cause, and a hearing before the full panel of the commission was set.") Thus in *Common Cause* I and *Common Cause* II, the Commission had moved beyond its executive function, and was acting in its adjudicative role.  *Id.*

{¶ 32} No such probable cause determination was made in this case. The only reasonable conclusion from the record is that the full Commission found a lack of sufficient evidence to move forward past the preliminary review stage.

{¶ 33} Based on our review of the record, and the reasoning and precedent in *Robinson, Billis, Ashenhurst, Common Cause* I, and *Common Cause* II, we find that Earl did not have a right to appeal from the Commission's decision to grant the motion to dismiss. Because the Commission did not move beyond its executive function, Earl never had a right to appeal under R.C. 119.12. The trial court correctly determined that it lacked jurisdiction over Earl's appeal.

## IV. Conclusion

{¶ 34} Earl's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*


KLATT and SADLER JJ., concur

_____